IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE SANTOS GOMEZ, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-26-3078 |
| ROBERT GUADIAN,[1] et al., | * | |
| Respondents. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Jose Santos Gomez's ("Santos Gomez" or "Petitioner") Amended Petition for Writ of Habeas Corpus (ECF No. 7). The Amended Petition is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Amended Petition in part.

## I. BACKGROUND

Petitioner Jose Santos Gomez is a native and citizen of El Salvador who entered the United States in 2002. (Am. Pet. Writ Habeas Corpus ["Am. Pet."] ¶¶ 1–2, ECF No. 7). He has no criminal history, and prior to his arrest by Immigration and Customs Enforcement ("ICE") on August 5, 2026, he had never been apprehended or encountered by United States immigration officials. (Id. ¶¶ 65–66).

---

[1] Under Federal Rule of Civil Procedure 25(d), the current Director of the Washington, D.C. Immigration and Customs Enforcement Field Office, Robert Guadian, is substituted for the former acting director of the Baltimore ICE Field Office, Vernon Liggins.

On August 5, 2026, ICE was conducting a targeted enforcement operation in Glen Burnie, Maryland, and "[w]hile in the area[,] [ICE] Officers conducted checks on various vehicles." (R. Deportable/Inadmissible Alien at 3, ECF No. 11-1). Santos Gomez was in his family car with his wife and child when he noticed a Department of Homeland Security ("DHS") vehicle following them. (Pet'r's Aff. ["Aff."] ¶ 2, ECF No. 10). Before he could pull over of his own volition, four DHS vehicles surrounded Santos Gomez's car, forcing a stop. (Id.).

Multiple ICE officers exited the DHS vehicles. (Id. ¶ 3). One approached Santos Gomez, speaking Spanish, and requested his ID. (Id.) When he could not provide it, he was ordered out of his car and handcuffed. (Id. ¶¶ 3–4). Unable to provide the officers with proof of U.S. citizenship, he was placed under arrest. (Id. ¶¶ 4–6). The ICE officers continued their patrol with Santos Gomez in the back seat and arrested another individual before taking Santos Gomez to the Baltimore ICE Field Office. (Id. ¶¶ 6–7). The next morning, he was taken to a Virginia detention center, where he is presently detained. (Id. ¶ 8; Pet'r's Reply Resp'ts' Resp. Am. Pet. ["Reply"] at 5, ECF No. 12).

Santos Gomez filed his initial Petition on August 6, 2026, (ECF No. 1), and filed an Amended Petition the next day, on August 7, 2026, (ECF No. 7). He seeks immediate release from immigration detention for alleged violations of the warrantless arrest authorities at 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 (Count I); the Fourth and Fifth Amendments (Count II); the detention statutes at 8 U.S.C. §§ 1225(b) and 1226(a) (Count

III); and his Fifth Amendment procedural due process rights (Count IV).[2] (Am. Pet. ¶¶ 71–119). Respondents Robert Guadian, Todd Lyons, Markwayne Mullin, and Todd Blanche (collectively "Respondents" or "the Government") filed a Response on August 18, 2026, (ECF No. 11), and Santos Gomez filed a Reply on August 24, 2026, (ECF No. 12).

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B. Analysis

Santos Gomez argues that his arrest and detention violate 8 U.S.C. §§ 1226 and 1357, 8 C.F.R. §§ 287.3 and 287.8, and the Fourth and Fifth Amendments of the United States Constitution, and that the only appropriate remedy is immediate release. (Am. Pet.

[2] Santos Gomez also brings a claim under 28 U.S.C. § 2247, seeking access to "all records related to decisions on his arrest and detention held by Respondents" (Count V). (Am. Pet. ¶ 121, ECF No. 7). Respondents state that the documents attached to their Response are "all the documents relating to the decision on Petitioner's arrest and detention, resolving" Santos Gomez's records request. (Resp'ts' Resp. Am. Pet. ["Resp."] at 3 n.1, ECF No. 11; see also ECF Nos. 11-1–11-4). While Santos Gomez disputes the accuracy of the information contained within those documents, he does not dispute Respondents' representation that they have provided all the documents Santos Gomez sought. (See generally Pet'r's Reply Rep'ts' Resp. Am. Pet., ECF No. 12). The Court, therefore, will deny Count V of the Amended Petition as moot.

¶¶ 71–119). The Government responds that ICE officers lawfully detained Santos Gomez under 8 U.S.C. § 1226 and that, at most, he is entitled to a bond hearing before an immigration judge. (Resp'ts' Resp. Am. Pet. ["Resp."] at 1–2, ECF No. 11). For the reasons below, the Court will grant the Amended Petition on Count I and order Santos Gomez's immediate release from immigration custody.

**1. Authority for Warrantless Arrests in the Immigration Context**

The default rule for immigration arrests and detention is found at 8 U.S.C. § 1226(a), which states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). An immigration officer may "arrest any alien in the United States" without a warrant only "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The phrase "reason to believe" in this context is equivalent to the constitutional probable cause standard. See Morales v. Chadbourne, 793 F.3d 208, 216 (1st Cir. 2015) ("Courts have consistently held that the 'reason to believe' phrase in § 1357 'must be read in light of constitutional standards, so that "reason to believe" must be considered the equivalent of probable cause.'" (quoting Au Yi Lau v. I.N.S., 445 F.2d 217, 222 (D.C.Cir. 1971))); see also United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause."); Tejeda-Mata v. I.N.S., 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' has been

equated with the constitutional requirement of probable cause." (first citing United States v. Cantu, 519 F.2d 494, 496 (7th Cir. 1975); and then citing Au Yi Lau, 445 F.2d at 222)).

The regulations concerning warrantless immigration arrests are found in a multi-step process at 8 C.F.R. § 287.8(c)(2) (2024). First, an officer must "ha[ve] reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States." Id. § 287.8(c)(2)(i). Second, the regulations require that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." Id. § 287.8(c)(2)(ii). Third, the officer must "[i]dentify himself or herself as an immigration officer" and "[s]tate that the person is under arrest and the reason for the arrest" "as soon as it is practical and safe to do so." Id. § 287.8(c)(2)(iii). Finally, after a warrantless arrest is made, officers must then comply with requirements under 8 C.F.R. § 287.3, which include examination of the arrestee, referral to an immigration judge for further inquiry, advisement of the reasons for the arrest and the arrestee's right to representation, and a determination within forty-eight hours as to whether the arrestee should remain detained or be released on bond or on recognizance and whether a notice to appear and warrant will be issued (unless the arrestee is granted voluntary departure or extraordinary circumstances prevent a determination within that timeframe). Id. §§ 287.3(a)–(d), 287.8(c)(2)(iv).

The requirement for a warrantless arrest under § 1357(a)(2) is therefore twofold. An arresting officer must have probable cause to believe that an individual is unlawfully present in the United States and must separately have probable cause to believe that the

individual is likely to escape before a warrant can be obtained. See 8 U.S.C. § 1357(a)(2). Thus, "an immigration officer can know for certain that someone is present in violation of immigration laws, and still . . . not have authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained.'" M-J-M-A- v. Hermosillo, 822 F.Supp.3d 1147, 1172 (D.Or. 2026) (quoting 8 C.F.R. § 287.8(c)(2)(ii)).

**2. Count I: Violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)**

In Count I, Santos Gomez alleges violations of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2). (Am. Pet. ¶¶ 71–79). The Parties both acknowledge that 8 U.S.C. § 1357(a)(2) and the implementing regulations at 8 C.F.R. § 287.8(c)(2) regulate warrantless arrests by immigration officers, requiring that immigration officers have probable cause to believe that an individual is present in the United States in violation of the law and is likely to escape before a warrant can be obtained. (Am. Pet. ¶ 18; Resp. at 5). "[T]hese warrantless-arrest authorities are strictly limited, particularly in the interior-arrest context." Morelos Valdovinos v. Noem, No. 26-cv-0338, 2026 WL 948285, at *5 (D.N.M. Apr. 8, 2026), report and recommendation adopted, No. Civ. 26-0338 JB/DLM, 2026 WL 2255156 (D.N.M. Aug. 5, 2026). The question here is whether Santos Gomez's

arrest was proper under these strictly limited authorities.[3] For the reasons below, the Court finds it more than evident that this warrantless arrest was improper.

As stated above, to conduct a warrantless arrest under 8 U.S.C. § 1357(a)(2), an immigration officer must have "reason to believe" that a noncitizen (1) "is in the United States in violation of any [immigration] law or regulation," and (2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Although the Parties put forth conflicting evidence on the first requirement,[4] there is no evidence in the record to suggest that Santos Gomez was likely to escape before a warrant could be obtained. Respondents' only argument for why officers had probable cause to believe that Santos Gomez was likely to escape is that he "has shown capable of evading immigration officials by entering the United States, without admission, [and] failing to comply with his duty to

---

[3] Respondents seem to suggest that Santos Gomez's encounter with ICE on August 5, 2026, was an "interrogation" rather than an "arrest." (See Resp. at 6 (stating that "8 C.F.R. § 287.5(a)(1) permits immigration officers to 'interrogate, without warrant, any alien or person believed to be an alien concerning his or her right to be, or to remain, in the United States'")). The Court rejects this implication. Santos Gomez had to exit his vehicle, was handcuffed, put in the backseat of a law enforcement vehicle, driven around while officers conducted a second arrest, and has been detained since that date. (Pet'r's Aff. ["Aff."] ¶¶ 4–8, ECF No. 10). This was plainly an arrest.

[4] The I-213 that Respondents submitted bears significant indicia of unreliability, as it repeatedly references the date July 28, 2026, rather than the true date of arrest August 5, 2026. (R. Deportable/Inadmissible Alien at 4, ECF No. 11-1). Santos Gomez submitted a sworn affidavit that contests the allegations in the I-213 regarding statements to ICE officers about his foreign citizenship and lack of immigration status in the United States. (Aff. ¶ 4). The Court need not make a final decision on which party's account is more reliable for this analysis, however, given that the evidence submitted does not establish the required risk of escape for a warrantless arrest.

register with the government." (Resp. at 5; see also R. Deportable/Inadmissible Alien at 3). The Court cannot accept this argument.

The warrantless arrest statute and regulations do not permit immigration officers to arrest an individual without a warrant when an officer only has probable cause to believe that the individual is present in the United States unlawfully. See 8 U.S.C. § 1357(a)(2) (An officer may "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." (emphasis added)); 8 C.F.R. § 287.8(c)(2). It would render the second part of the statute and regulations superfluous if the Court were to conclude that an officer's probable cause to believe that an individual has violated this country's immigration laws inherently creates probable cause to believe that there is a risk of escape. See Escobar Molina v. U.S. Dep't of Homeland Sec., 811 F.Supp.3d 1, 32 (D.D.C. 2025) ("[T]he Fourth Circuit has explained persuasively that conflating unlawful status and escape risk 'is contrary to the statute itself, which requires that the [Government] must have reasonable belief both that the alien is in the country illegally and that the alien is likely to escape before a warrant can be obtained.'" (quoting United States v. Harrison, 168 F.3d 483 (4th Cir. 1999) (per curiam) (unpublished table decision)); Moreno v. Napolitano, 213 F.Supp.3d 999, 1007 (N.D.Ill. 2016) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless."). Such a conclusion would further result in officers' warrantless arrest authority extending to every

individual who may, or may not, be unlawfully present in the United States. Congress explicitly created the warrant requirement in this context and delineated two requirements that officers must meet to perform a warrantless arrest, and immigration officers are bound by this law. See Arizona v. United States, 567 U.S. 387, 408 (2012) ("If no federal warrant has been issued, [immigration] officers have more limited authority. They may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only where the alien 'is likely to escape before a warrant can be obtained.'" (citation omitted) (quoting 8 U.S.C. § 1357(a)(2))).

Furthermore, the evidence in the record strongly suggests that officers did not have probable cause to believe that Santos Gomez was likely to escape before a warrant could issue. The I-213, Record of Deportable/Inadmissible Alien, makes clear that ICE officers were not targeting Santos Gomez and had no prior knowledge of his immigration status. (R. Deportable/Inadmissible Alien at 3). The officers appear to have been performing random checks of vehicle registrations and cross-referencing the registered owner with immigration and criminal databases.[5] (Id.). Santos Gomez was driving in his car, registered under his name, and presented his car registration, which officers already had access to, when he was stopped. (Aff. ¶ 3). Immigration officers presumably could have obtained his

[5] The immigration databases in question only contain information on noncitizens and naturalized citizens, and a record check on a natural-born U.S. citizen would come up with the same lack of results as an individual who entered the United States without inspection. See Hr'g Tr. 12:23–13:1, Acevedo Sanchez v. Liggins, No. JRR-26-2345 (D.Md. July 23, 2026) (ECF No. 18) ("[E]very single records check returned a negative result. And that would be the same of somebody born in the United States who had never been fingerprinted by any of these agencies.").

home address for further service of a Notice to Appear, or to arrest him after obtaining a warrant, as required by law. See S. v. Blanche, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *6 (D.Minn. July 10, 2026) ("The relevant inquiry is not whether the noncitizen has failed to be law-abiding in the past, but 'whether immigration enforcement would be able to arrest the noncitizen at "another clearly identifiable location."'" (quoting Walther Ademir A.S. v. Blanche, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D.Minn. June 16, 2026)). Here, they chose not to.

For these reasons, the Court finds that ICE officers conducted an unlawful warrantless arrest of Santos Gomez in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2). Accordingly, the Court will grant Count I of the Amended Petition.

**3. Proper Relief**

As for the remedy, the Court agrees with the several district courts across the country, and two judges in this District, that have found that noncompliance with 8 U.S.C. § 1357(a)(2) and its implementing regulations requires immediate release because an individual cannot be lawfully detained under § 1226(a) where the explicit warrant requirement is not satisfied. See, e.g., Chogllo Chafla v. Scott, 804 F.Supp.3d 247, 264 (D.Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a) . . . [I]t follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)."); Adriano L.V. v. Noem, No. 26-CV-269 (MJD/DJF), 2026 WL 184570, at *3 (D.Minn. Jan. 18, 2026) (declining to order a bond hearing under § 1226(a) after an improper warrantless arrest because "the warrant requirement . . . is plainly in the text of Section 1226(a)"), report and recommendation

adopted, No. 26-269 (MJD/DJF), 2026 WL 194401 (D.Minn. Jan. 23, 2026); Alves v. Stamper, No. 2:26-CV-00318-SDN, 2026 WL 1802817, at *3 (D.Me. June 23, 2026) (recognizing that if "the initial arrest [was] made in violation of the statute, [it] would render any subsequent detention independently unlawful."); see also Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *5 (D.Nev. Apr. 6, 2026); Venancio P.J. v. Blanche, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *3 (D.Minn. June 29, 2026); Arrioja Blanco v. Valdez, Civ. No. 26-cv-03312-PAB, 2026 WL 2267337, at *2 (D.Colo. Aug. 6, 2026); Morelos Valdovinos, 2026 WL 948285, at *2, 7; see also July 15, 2026 Order, Gavilan Sanchez v. Liggins, No. MJM-26-2346 (D.Md. July 15, 2026) (ECF No. 15); July 23, 2026 Order, Acevedo Sanchez v. Liggins, No. JRR-26-2345 (D.Md. July 23, 2026) (ECF No. 13).

The Court, therefore, will order Santos Gomez's immediate release from immigration detention.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Jose Santos Gomez's Amended Petition for Writ of Habeas Corpus (ECF No. 7) on Count I.[6] A separate Order follows.

Entered this 28th day of August, 2026.

/s/
George L. Russell, III
Chief United States District Judge

[6] Having granted the Amended Petition on Count I, the Court declines to reach the merits of Santos Gomez's other claims and will deny them as moot. (See Am. Pet. ¶¶ 80–110).